FILED
2008 Feb-28  AM 10:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

KEVIN A CALMA, individually and on        :
behalf of all others similarly situated,

                                          :
              Plaintiffs,

                                          :

        - vs. -

                                          :   CIVIL ACTION NO.:

FRANKLIN COLLECTION SERVICE, INC.;
UAB MEDICAL WEST; and UAB HEALTH:
SYSTEM,

                                          :
              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## CLASS ACTION COMPLAINT

### Jury Trial Demanded

Plaintiff Kevin A. Calma ("Calma") files this Complaint pursuant to Fed.R.Civ.P. Rule

23, individually and on behalf of similarly situated debtor individuals, against Franklin

Collection Service, Inc., UAB Medical West and UAB Health System (collectively, the

"Defendants"), and alleges as follows:

### NATURE OF THE ACTION

1.      This class action is brought to redress violations of the Racketeer Influenced and

Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and for other unlawful acts or

omissions that have proximately caused damage and injury to, and resulted in a loss of property

of, plaintiff and the class members.

2.      Defendant UAB Medical West ("UABW") is a health care institution operating

under the umbrella of Defendant UAB Health System ("UABHS").  UABW provides medical

services to individuals, including plaintiff and class members, on an inpatient and outpatient basis, and bills patients for those services pursuant to procedures implemented by UABW and UABHS. When patients' bills become delinquent, Defendants UABW and UABHS utilize the services of Defendant Franklin Collection Service, Inc. ("Franklin") to collect debts. Franklin, with full knowledge, approval, and ratification by UABW and UABHS, then engages in a number of fraudulent, deceptive and illegal practices to collect the debt, including, but not limited to, improperly threatening suit, and adding illegal costs and charges without explanation and which Franklin has no right to collect, all aimed at coercing consumers into paying not only the original debt, but additional monies that the consumers do not owe and which defendants have no right to collect.

3.     Defendants UABW and UABHS (collectively, the "UAB Defendants") collect debts in two basic ways - either by sending out payment due notices themselves or by retaining a collection service such as defendant Franklin to collect the debt on their behalf. Although the UAB defendants delegate collection activities to defendant Franklin, Franklin functions as an agent under the UAB defendants' direction and control. The Defendants conspire to misrepresent the amount of the debt to consumers in order to enrich themselves and others through a scheme of racketeering activity and unlawful conduct designed to coerce consumers to pay money not owed.

4.     Franklin, in conduct ratified and approved by the UAB defendants, then uses unlawful methods to collect the debt, and improperly and illegally adds undisclosed amounts to the debt, in an effort to profit Franklin and the UAB defendants.

5.     It was a part of the conspiracy that the Defendants would use threatened civil litigation and addition of undisclosed additional charges and costs, all designed to coerce consumers to pay more than what was owed. Rather than use proper legal processes and

2

legitimate means to collect debts, the Defendants instead sought to wrongfully coerce and pressure consumers to pay excessive sums of money by means of various illegal acts. To this end, the Defendants conspired to form a racketeering enterprise and to conduct the affairs of that enterprise through a pattern of racketeering activity, rather than through the use of lawful and legitimate processes.

6.      It was further a part of the conspiracy, as set forth more fully below, that Defendants would use these illegal practices to enrich the Defendants, and to wrongfully obtain the money of Plaintiff and class members, by means of conducting the collection activities of Franklin through a pattern of racketeering activity, including but not limited to, acts of mail and wire fraud, in violation of 18 U.S.C. §§ 1341, 1343, and 1346.

## DEMAND FOR JURY TRIAL

7.      Plaintiff demands a trial by jury on all counts.

## PARTIES

8.      Plaintiff Kevin A. Calma is a resident of Jefferson County, Alabama. Plaintiff has been a victim of the practices complained of in this action, all of which occurred in Alabama. Potential class members are residents of Alabama and potentially other states where service is provided by Defendants.

9.      Plaintiff brings this action against the Defendants for himself and on behalf of a class of similarly situated individuals defined as follows:

> All debtors who were patients at any UAB Hospital, who received collection notices from Franklin wherein the amount claimed to be due for collection purposes was larger than the actual bill, and who paid or agreed to pay any or all of the amount in excess of the original debt, whether in lump sum or payments, for a period of four years prior to the commencement of this action.
>
> The class does not include any person who has been sued by defendants for medical charges, or anyone who has paid less than the original debt;

3

also excluded from the class are defendants, any officers or directors of defendants, the legal representatives, heirs, successors and assigns of defendants, and any judicial officer assigned to this matter and his or her immediate family.

10.     Defendant Franklin is a foreign corporation, organized and existing under the laws of Mississippi, doing business in Alabama.  At all times relevant hereto, Franklin was engaged in the business as a consumer debt collection enterprise.

11.     Defendant UABW is a medical facility doing business in the state of Alabama, and an affiliate/member of UABHS.

12.     Defendant UABHS is organized under the laws of Alabama, with its principal office in Birmingham, Alabama.  On information and belief, UABHS manages health care delivery, charges, and billing for all UAB Hospitals, including UABW.

13.     At all relevant times, all UABHS entities and UABW were the agents of the other UABHS entities, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interest and the interests of the other defendants they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by the other UABHS entities, even though they may have been contrary to corporate policy.

14.     Whenever this complaint alleges that any defendant did any act or thing, it is meant that it, its directors, officers, agents, or employees or the directors, officers, agents, or employees of its subsidiaries or affiliates, performed or participated in such act or thing, and in each instance that such act or thing was authorized or ratified by, and done on behalf of, that defendant.

4

## JURISDICTION

### *Subject Matter*

15.     This Court has jurisdiction over the subject matter and the Defendants in this case pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, specifically, 18 U.S.C. §§ 1964(a) and (c); and 28 U.S.C. § 1331, as those matters arise under the laws of the United States of America.  This Court also has supplemental  jurisdiction, pursuant to 28 U.S.C. § 1367, because the state law claims are so related to the federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

### *In Personam*

16.     This Court has *in personam* jurisdiction over Defendants.

## VENUE

17.     Venue is proper pursuant to 28 U.S.C. § 1391(b) in this District as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here, and is proper pursuant to 18 U.S.C. § 1965(a) because the Defendants transacted their affairs here.

## FACTUAL ALLEGATIONS

18.     The Plaintiff's minor daughter, Madeline Calma, received services from UABW, and the Plaintiff incurred a debt to Defendant UABW on or about June 17, 2007 in the amount of $735.00.  The plaintiff signed a contract with UABW, which on information and belief, stated, in part, as follows: "I agree that if this account is not paid when due, and if the hospital should retain an attorney or collection agency for collection, I agree to pay all costs of collection including interest, reasonable attorney's fee (even if suit filed) and reasonable collection agency fees."  A copy of a statement from UABW dated August 14, 2007 is attached hereto as "Exhibit

A," and a copy of a statement from UABW dated September 25, 2007 is attached hereto as "Exhibit B."

19.     The Plaintiff believed that this debt was paid by his insurance company, Fairmont Specialty Group Simple STM policy # 0315579015470.

20.     The Plaintiff received a dunning communication from Franklin dated January 15, 2008, a copy of which is attached hereto as "Exhibit C." Said dunning communication illegally and without authorization added $257.25 to the Plaintiff's debt, which represents thirty-five (35%) of the original debt.

21.     The dunning communication alleged that it was a "***NOTICE OF INTENT TO FILE CIVIL LAWSUIT***." The communication additionally threatened the Plaintiff that if he did not pay the $992.25 debt in full he would possibly be subject to "incurring added expenses such as court cost, attorney fees and/or damages."

22.     After receiving these dunning and threatening communications on January 18, 2008, and as a direct result of these threatened actions, Plaintiff authorized Franklin to obtain payment from a direct bank payment from his checking account for the full amount Franklin required him to pay, $992.25.

23.     Franklin withdrew $1002.25 from Plaintiff's checking account on or about January 24, 2008, $10.00 more than the amount Franklin originally sought.

24.     UABW and Franklin have conspired to create an artificial "profit" over and above the amount due and owing to it by the Plaintiff in adding these fraudulent and illegal charges. The creation of artificial and illegal profits is a pattern and practice of Franklin and UABW, as well as other creditors for which it provides collection services.

6

## THE RICO ENTERPRISE

25.     Plaintiff, the class members and defendants are "persons" within the meaning of 18 USC §1961(3).

26.     Franklin is a high volume debt collector that attempts to collect debts, allegedly owed by consumers in Alabama and throughout the country.  Franklin's collection efforts are primarily through the use of dunning letters and follow-up telephone calls.  Such letters and calls frequently involve the threats of civil lawsuits.  Franklin also attempts to collect amounts far in excess of the original debt, adding illegal and unlawful fees and charges to the debt, and failing to disclose the nature and extent of those additional charges.

27.     Franklin has no authority or legal right to add a percentage up-charge above the original debt amount.  Nevertheless, Franklin conspires with the UAB Defendants to take the original debt and mark it up by a percentage, thereby ensuring that the UAB Defendants receive either the full amount of the debt owed to them, or the full amount of the debt plus an artificial, illegal profit added to the debt, and Franklin simultaneously benefits by receiving additional charges for which it is not entitled to receive.

28.     Defendants have operated or managed an enterprise, namely, the "Collection Enterprise," with the Defendants as its members, employees, associates, and co-conspirators, in which they have conducted or participated, directly or indirectly, to extort, defraud, and misappropriate from Plaintiff and class members through a pattern of racketeering activity.

29.     Based upon plaintiff's current knowledge, the following persons constitute a union or group of individuals associated in fact, that plaintiff refers to as the "Collection Enterprise":

(1)     Defendants;

7

(2)     Other UABHS hospitals; and,

(3)     Other creditors utilizing collection services from defendant, Franklin.

30.     This "Collection Enterprise" was formed to coerce payments over and above what was rightfully and legally owed through unlawful mark-ups and add-on charges, and threatened civil litigation, enriching the defendants.

31.     The "Collection Enterprise" constitutes a legal association, as well as a group of individuals associated in fact, within the meaning of 18 U.S.C. § 1961(4).

32.     All acts and omissions of the "Collection Enterprise" as set forth herein are imputed to, and are the acts and omissions of, the Defendants, unless otherwise indicated.  The "Collection Enterprise" is an ongoing organization which engages in, and whose activities affect, interstate commerce.

33.     While the Defendants participate in and are members of the "Collection Enterprise," they also have an ascertainable structure and existence separate and distinct from the Enterprise and the pattern of racketeering alleged herein.

34.     Rather than conduct the collection activities against Plaintiff and class members in accordance with lawful processes and legal procedures, the Defendants agreed to, and did, engage in multiple illegal acts, constituting a pattern of racketeering activity, intended to unlawfully threaten and coerce Plaintiff and class members to pay more than was legitimately owed and payable.   To this end, amongst other illegal and improper conduct, Defendants knowingly encouraged, solicited, and participated in a fraud scheme to wrongfully add on unlawful charges and falsely and improperly threaten civil litigation to achieve the purposes of the racketeering conspiracy.

35.     On information and belief, Franklin adds a percentage to each debt it collects on behalf of the UAB defendants.  This percentage, which in the case of the plaintiff was 35%, is

added to create an artificial "profit" over and above the amount due and owed by the plaintiff. The plaintiff's contract with UABW allows for "reasonable collection agency fees." However, Franklin's addition of a percentage to its collection amount is *per se* unreasonable. The amount of collection costs to collect a debt does not vary based on the amount of the debt. In other words, it costs no more to collect a $100.00 debt than it does to collect a $100,000.00 debt. However, under the scheme instituted by the defendants, the amounts added to the debt increase with the amount of the debt and amount to fraudulent and illegal charges.

36.     Moreover, Franklin, in its dunning letters to the plaintiff and the class members, makes false statements and assertions to extort payment of illegal charges. For example, Franklin's letter to plaintiff on behalf of the UAB defendants states "Beware, the creditor listed below has authorized Franklin Collection Service, Inc. to file a civil lawsuit against you on their behalf to secure themselves from any further loss." (Exhibit C, emphasis added). This is an overt misrepresentation by the defendants with respect to threatened additional loss on the part of the creditor (here, the UAB defendants). The debt being collected by Franklin does not and cannot lead to "further loss" on the part of the UAB defendants, and such language is included to further threaten the plaintiff and class members, by suggesting the prospect of additional amounts being owed to the UAB defendants.

## PREDICATE ACTS

37.     Section 1961(1) of RICO provides that "racketeering activity" includes any act indictable under 18 U.S.C. §1341 (relating to mail fraud), 18 U.S.C. §1343 (relating to wire fraud), 18 U.S.C. §1951 (relating to interference with commerce through extortion), and 18 U.S.C. §1952 (relating to travel in aid of extortionate conduct). As set forth below, defendants have and continue to engage in conduct violating each of these laws to effectuate their scheme.

38.     In addition, in order to make their scheme effective, each of the defendants sought to and did aid and abet the others' in violating the above laws within the meaning of 18 U.S.C. §2. As a result, their conduct is indictable under 18 U.S.C. §1341, 1343, 1951(b)(2) and 1952(a) on this additional basis.

### Violations of 18 U.S.C. §§ 1341 and 1343

39.     For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false pretenses, representations or promises, the defendants, in violation of 18 U.S.C. §1341, placed in post offices and/or in authorized repositories matter and things to be sent or delivered by the postal service, caused matter and things to be delivered by commercial interstate carrier, and received matter and things from the postal service or commercial interstate carriers, including, but not limited to, contracts, agreements, billing records, payments, collection letters, and dunning letters.

40.     For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false pretenses, representations or promises, the defendants, also in violation of 18 U.S.C. §1343, transmitted and received by wire, matter and things which include, but are not limited to, contracts, agreements, billing records, payments, collection letters, and dunning letters.

41.     The matter and things sent or received by defendants via the postal service, commercial carrier, wire, or other interstate electronic media include *inter alia*:

(a)     material containing false and fraudulent misrepresentations regarding the amount and character of the debt being collected;

(b)     material containing false and fraudulent misrepresentations concerning the alleged threat of civil litigation to collect the false debt; and,

(c)     defendants accepted payments from plaintiff and class members including the unlawful overcharges.

42.     Other matter and things sent through or received from the postal service, commercial carrier, or interstate wire transmission by defendants included information or communications in furtherance of or necessary to effectuate this scheme.

43.     The defendants' misrepresentations, acts of concealment, and failures to disclose were knowing and intentional, and made for the purpose of deceiving plaintiff and the class in obtaining their property for the defendants' gain.

44.     The defendants either knew or recklessly disregarded the fact that the misrepresentation and omissions described above were material, and plaintiff and the class relied on the misrepresentations and omissions as set forth above, by paying or agreeing to pay amounts in excess of the original debt.

45.     As a result, defendants have obtained money and property belonging to plaintiff and class members, and plaintiff and the class members have been injured in their business or property by the defendants' overt acts of mail and wire fraud, and by their aiding and abetting each others' acts of mail and wire fraud.

### Violations of 18 U.S.C. §§ 1951(a) and (b)(2) and 1952(a)(3)

46.     Defendants have also carried out and/or attempted to carry out the schemes described above, and thereby obtained the property of plaintiff and members of the class, by inducing them to part with their property out of fear of economic loss.

47.     Specifically, defendants have coerced plaintiff and members of the class to pay amounts more than were legitimately owed, through fear of economic loss in threatened civil lawsuits, and the potential for even further damages payable by plaintiff and class members.

48.     Defendants created this fear through threats, both veiled and explicit, that plaintiff and class members will be forced to pay even additional monies that are not properly due.

49.     These threats are made more credible through the conspiracy described above.

11

50.   Defendants' extortionate conduct obstructs and affects interstate commerce.

51.   Defendants also travel and use the mail or other facilities of interstate commerce, and cause others to do so, with the intent of carrying on their extortion in violation of 18 U.S.C. §1951(a) and (b)(2).  As a result, defendants have violated 18 U.S.C. §1952(a)(3) as well.

52.   As a result of defendants' overt acts in violation of 18 U.S.C. §§1951(a) and (b)(2) and 1952(a)(3), as well as defendants' aiding and abetting of those violations, plaintiff and members of the class have parted with money that was rightfully theirs and have been injured in their businesses and property.

## CONSPIRACY

53.   Defendants have not undertaken the above practices and activities in isolation, but instead have done so as part of a common scheme and conspiracy, which includes not only the defendants, but other creditors which utilize defendant Franklin's services.

54.   Each defendant and members of the conspiracy, with knowledge and intent, agreed to the overall objective of the conspiracy, agreed to commit acts of fraud and extortion to relieve plaintiff and class members of their rightful property and actually committed such acts.

55.   Indeed, for the fraudulent schemes described above to be successful, each defendant and other members of the conspiracy had to agree to enact and utilize the same devices and fraudulent tactics against the plaintiff and members of the class.

56.   Numerous common facts and similar activities, which reflect the above reality and imply the existence of a conspiracy, exist among the defendants and other members of the conspiracy, including:

(a) Franklin is compensated by each creditor based upon a contingency fee arrangement.

(b) Franklin and each creditor conspire to add artificial and illegal profits to the amount of debts owed by the members of the class.

(c) Franklin and each creditor conspire to threaten actions that they are not legally entitled to take, and to collect debts they are not legally entitled to receive.

(d) Franklin and each creditor conspire to use the telephone to collect these artificial profits and illegal charges.

(e) Franklin and each creditor conspire to use the U.S. postal system to collect these artificial profits and illegal charges.

(f) Franklin and each creditor conspire to use electronic mail, electronic payment systems, state and federal banking systems involved in interstate commerce, and other common means of collecting these artificial profits and illegal charges.

(g) Franklin and each creditor use a common post office box to collect these artificial profits and illegal charges.

(h) Franklin and each creditor conspire to add a percentage up-charge to each debt, rendering the collection charges *per se* unreasonable.

(i) Franklin and each creditor conspire to extort over payment from plaintiff and class members by falsely threatening that nonpayment could subject the creditor to "further loss."

57.     During the past ten years, the conspiracy was conducted through and implemented by: the agreements between Franklin and the creditors (either explicit or implicit), to conduct the activities and practices set out in paragraphs 35, 36, 41 and 56, above.

## PATTERN OF RACKETEERING ACTIVITY

58.     The defendants have engaged in a "pattern of racketeering activity", as defined by 18 U.S.C. §1961(5), by committing or aiding and abetting in the commission of at least two acts of racketeering activity, i.e. indictable violations of 18 U.S.C. §§1341, 1343, 1951(b)(2), or 1952(a)(3) as described above, within the past ten years.  In fact, each of the defendants has committed or aided and abetted in the commission of thousands of acts of racketeering activity. Each act of racketeering activity was related, had a similar purpose, involved the same or similar participants and method of commission, had similar results and impacted similar victims, including plaintiff and class members.

13

59.     The multiple acts of racketeering activity which defendants committed and/or conspired to or aided and abetted in the commission of, were related to each other and amount to and pose a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity" as defined in 18 U.S.C. §1961(5).

60.     A few representative examples of the types of predicate acts committed by defendants pursuant to their scheme to defraud the plaintiff and their conspiracy to violate RICO are set forth below.

61.     On August 14, 2007 and September 25, 2007 UABW mailed statements to plaintiff advising the plaintiff that he owed a debt to UABW of $735.00. These statements were sent to the plaintiff through the US mail.

62.     On or about January 15, 2008, Franklin sent a communication to the plaintiff through the US mail, stating that it was a "NOTICE OF INTENT TO FILE CIVIL LAWSUIT." This letter stated that the debt owed by plaintiff was $992.25, $257.25 (or 35%) more than the original debt. This representation by Franklin was false, as this was neither the plaintiff's actual debt to UABW, nor was it the original debt plus a "reasonable collection agency fee."

63.     The January 15, 2008 communication from Franklin further claimed that a lawsuit would have to be filed "to secure [UABW] from any further loss." This communication is also a misrepresentation, as the debt owed by plaintiff cannot subject UABW to "further loss."

64.     In addition, plaintiff authorized Franklin to obtain payment from a direct bank payment from his checking account for the full amount. Franklin required plaintiff to pay, $992.25. However, Franklin, using the mail and/or wires withdrew $1,002.25 from plaintiff's checking account on or about January 24, 2008, $10.00 more than the amount sought by Franklin and agreed to by plaintiff.

65.  Katonia Haire ("Haire") is an individual who has previously filed a lawsuit against Franklin asserting illegal collection activities on behalf of UABW.[1]  Haire also signed a contract with UABW, which stated, in part, as follows:  "I agree that if this account is not paid when due, and if the hospital should retain an attorney or collection agency for collection, I agree to pay all costs of collection including interest, reasonable attorney's fee (even if suit filed) and reasonable collection agency fees."  A copy of this contract is attached hereto as "Exhibit D."

66.  Prior to December 28, 2004, Haire incurred medical expenses from UABW for $1011.71.  On or about December 28, 2004, Franklin sent a communication to Haire through the US mail, stating that it was an "ASSIGNMENT OF COLLECTION," a copy of which is attached hereto as "Exhibit E."  This letter stated that the debt owed by Haire  was $1315.22, $303.51 (or 30%) more than the original debt.  This representation by Franklin was false, as this was neither the plaintiff's actual debt to UABW, nor was it the original debt plus a "reasonable collection agency fee."

67.  Peddie Kelley ("Kelley") is an individual who has previously filed a lawsuit against Franklin asserting illegal collection activities on behalf of Northstar EMS, Inc. ("Northstar"), an ambulance company providing medical services to consumers.[2]  On or about March 11, 2005 Kelley incurred medical expenses from Northstar in the amount of $493.00 for ambulance services provided to Kelley.

68.  Subsequent to March 11, 2005, Franklin sent a collection notice communication to Kelley through the US mail.  This collection notice stated that the debt owed by Kelley was

---

[1]  Haire is not a party to this lawsuit, and is included herein as an example of other instances of defendants' conduct.

[2]  Kelley is not a party to this lawsuit, and is included herein as an example of other instances of defendants' conduct.

$631.00, $138.00 (or 28%) more than the original debt. This representation by Franklin was false, as this was neither Kelley's actual debt to Northstar, nor was it the original debt plus a "reasonable collection agency fee."

69. The predicate acts described above demonstrate the regular business practice of these defendants. UABW routinely adds illegal, unauthorized, and unreasonable charges and Franklin collects these charges.

## RICO VIOLATIONS

### §1962(a)

70. Section 1962(a) of RICO provides that "it shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering . . . in which such person has participated as a principal within the meaning of §2, Title 18, U.S. Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect interstate or foreign commerce."

71. As set for above, defendants receive income from their participation as principals in an extensive pattern of racketeering activity.

72. That income is reinvested to finance future racketeering activity, and the future operation of the "Collection Enterprise."

### §1962(c)

73. Section 1962(c) of RICO provides that it "shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . ."

74.     Through the patterns of racketeering activities outlined above, the defendants have also conducted and participated in the affairs of the "Collection Enterprise."

## §1962(d)

75.     Section 1962(d) of RICO makes it unlawful "for any person to conspire to violate any of the provisions of subsections (a), (b) or (c) of this section."

76.     Defendants' conspiracy to secure money due the plaintiff and class members for their own use through the fraudulent and extortionate scheme described above violates 18 U.S.C. §1962(d).

77.     Each of the defendants agreed to participate, directly or indirectly, in the conduct of the affairs of the "Collection Enterprise" through a pattern of racketeering activity comprised of numerous acts of mail fraud, wire fraud, and extortion, and each defendant so participated in violation of 18 U.S.C. §1962(c).

78.     Each defendant further agreed to use or invest, directly or indirectly, part of the income derived from the acts of mail fraud, wire fraud, and extortion, which constituted a pattern of racketeering activity, in the establishment, operation, and expansion of the "Collection Enterprise," and has done so in violation of 18 U.S.C. §1962(a).

## CLASS ALLEGATIONS

### Class Definition

79.     Plaintiff brings this action on his own behalf and pursuant to Fed. R. Civ. P. Rule 23(b)(1)(A), (b)(2), and/or (b)(3), as a class action on behalf of a nationwide class of persons defined as:

> All debtors who were patients at any UAB Hospital, who received collection notices from Franklin wherein the amount claimed to be due for collection purposes was larger than the actual bill, and who paid or agreed to pay any or all of the amount in excess of the

17

original debt, whether in lump sum or payments, for a period of four years prior to the commencement of this action.

The class does not include any person who has been sued by defendants for medical charges, or anyone who has paid less than the original debt; also excluded from the class are defendants, any officers or directors of defendants, the legal representatives, heirs, successors and assigns of defendants, and any judicial officer assigned to this matter and his or her immediate family.

## Numerosity

80.     The members of the class are so numerous that joinder of all members is impractical and inefficient such that the requirements of Fed. R. Civ. P. Rule 23(a)(1) are met. Plaintiff does not know the exact number of class members, but is informed and believes that hundreds, if not thousands, of patients/debtors have been sent collection notices by Franklin for amounts not actually owed.  The class is ascertainable as the names and addresses of all class members can be identified in business records maintained by the defendants.

## Commonality

81.     The questions of law and fact common to the class include, *inter alia*:

(a)  whether defendants conspired and/or aided and abetted each other in furtherance of the unlawful acts alleged herein;

(b)  whether defendants have engaged in mail and wire fraud;

(c)  whether defendants induced plaintiff and class members to part with their property out of fear of economic loss so as to violate 18 U.S.C. §1951;

(d)  whether defendants have engaged in interstate travel to effectuate their extortionate acts so as to violate 18 U.S.C. § 1952;

(e)  whether defendants engaged in a pattern of racketeering activity;

(f) whether the "Collection Enterprise" is an enterprise within the meaning of 18 U.S.C. §1961(4);

(g) whether defendants have used or invested income from the racketeering activities to establish or operate the "Collection Enterprise" in violation of 18 U.S.C. § 1962(a);

(h) whether defendants conducted or participated in the affairs of the "Collection Enterprise" through a pattern of racketeering activity in violation of 18 U.S.C. §1962(c);

(i) whether defendants' overt and/or predicate acts in furtherance of the conspiracy and/or aiding and abetting and/or direct acts in violation of 18 U.S.C. §1962(a)(c) proximately caused injury to plaintiff's and class members' business or property;

(j) whether defendants act and/or refuse to act on grounds generally applicable to the plaintiff and class members.

(k) whether defendants fraudulently concealed their scheme;

(l) whether defendants are unjustly enriched by their scheme;

(m)     whether the collection charges applied by the defendants are *per se* unreasonable and unconscionable;

(n)   whether the plaintiff and other class members are entitled to restitution of over charges collected by defendants; and

(o) whether the court should grant injunctive relief to plaintiff and class members to prevent the defendants' ongoing conduct.

The requirements of Fed. R. Civ. P. Rule 23(a)(2) are met.

### Typicality

82.     The claims of the representative plaintiff are typical of the claims of the class as a whole.   If brought and prosecuted individually, the claims of each class member would

necessarily require proof of the same material and substantive facts, rely upon the same remedial theories, and seek the same relief. Plaintiff is a member of the class and has suffered harm due to the unfair, deceptive, and unconscionable collection practices of defendants. The requirements of Fed. R. Civ. P. Rule 23(a)(3) are met.

### Adequate Representation

83.    The representative plaintiff is willing and prepared to serve the Court and proposed class and sub-classes in a representative capacity with all of the obligations and duties material thereto, pursuant to Fed. R. Civ. P. Rule 23(a)(4). The interests of the representative plaintiff are consistent with and not antagonistic to the interests of the class. The class representative has retained counsel experienced in prosecuting class actions and complex consumer litigation.

### RULE 23(b)(1)

84.    The prosecution of separate actions by individual members of the class would create a risk of adjudications with respect to individual members of the class which would, as a practical matter, be dispositive of the interests of other members of the class who are not parties to the action, or could substantially impair or impede their ability to protect their interests.

85.    The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the parties opposing the class. Such incompatible standards and inconsistent or varying adjudications, on what would necessarily be the same essential facts, proof, and legal theories would also create and allow to exist inconsistent and incompatible rights within the plaintiffs' class.

**RULE 23(b)(2)**

86.   The defendants have acted or refused to act on grounds generally applicable to the class, making final declaratory or injunctive relief appropriate.

**RULE 23(b)(3)**

87.   The questions of law and fact common to members of the class and sub-classes predominate over any questions affecting only individual members.

88.   A class action is superior to other available methods for the fair and efficient adjudication of the controversies herein in that individual claims by the class members are impractical as the costs of pursuit far exceed what any one plaintiff or class member has at stake. Therefore, certification under Fed. R. Civ. P. Rule 23(b)(3) is appropriate.

**COUNT I**

*Violations of the Racketeering and Influence Corrupt Organizations Act,*
*18 U.S.C. § 1961 et seq.*

89.   Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

90.   At all times relevant to this complaint, the "Collection Enterprise" was, and continues to be, an enterprise as defined by 18 U.S.C. § 1961(4), and has engaged in, and continues to engage in, activities that affect interstate and foreign commerce.

91.   Defendants, acting as the members, employees, associates, and co-conspirators of the enterprise, have sought to coerce payment of amounts not owed by plaintiff and class members.

92.   Defendants have each knowingly and willfully, agreed, conspired, and associated with the enterprise and conducted and participated in the conduct of the enterprise's affairs, directly and indirectly, by illegally and fraudulently agreeing to add unlawful charges to debts

21

and repeatedly using the threat of civil litigation to extort or attempt to extort payments of the debt, along with the illegal overcharges, all through a pattern of racketeering activity, which injured plaintiff and class members, in violation of 18 U.S.C. § 1962(c) and (d).

93.     As described above, the pattern of racketeering involved various, and continuing acts of illegal activity including, but not limited to, acts of:

- Extortion in violation of the Hobbs Act, 18 U.S.C. § 1951;

- Wire and mail fraud in violation of 18 U.S.C. §§ 1341, 1343, and 1346;

94.     These acts occurred beginning in at least 2003, continue through the present and pose a threat of continued criminal activity intended to extort and coerce the payment of excess and illegal charges.

95.     As a result of the pattern of continuing racketeering activity, plaintiff and class members have suffered damage, and will likely suffer additional injury if Defendants' conduct continues.

## COUNT II

*Violations of the Racketeering and Influence Corrupt Organizations Act,*
*18 U.S.C. § 1962(d) by Conspiring to Violate 18 U.S.C. §§ 1962 (a) and (c).*

96.     Plaintiff and class members incorporate and reallege the paragraphs above as if fully set out herein.

97.     In violation of 18 U.S.C. §1962(d), defendants have, as set forth above, conspired to violate: 18 U.S.C. §1962(a) by using and investing income received from a pattern of racketeering, directly or indirectly, to establish and operate the "Collection Enterprise," which is engaged in and whose activities affect, interstate commerce; and 18 U.S.C. §1962(c) by conducting or participating directly or indirectly in the conduct of and the affairs of the "Collection Enterprise" through a pattern of racketeering.

98.     As a direct and proximate result, plaintiff and class members have been injured in their business or property by both the predicate acts which make up the defendants' patterns of racketeering and their investment and re-investment of income therefrom to operate, expand, and perpetuate the "Collection Enterprise."

99.     Plaintiff and class members have been injured by the illegal and unlawful over charges, threatened civil litigation, and misrepresentations as to the amount of the debt and the potential for "further losses."

## COUNT III

### *Violations of 18 U.S.C. §2 by Seeking to and Aiding and Abetting in the Violation of 18 U.S.C. § 1962 (a) and (c).*

100.    Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

101.    This claim of relief arises under 18 U.S.C. §1964(c).

102.    As set forth above, defendants knowingly, and with shared intent, sought to, and have aided and abetted each of the other defendants in the commission of predicate acts, in engaging in a pattern of racketeering activity, and in violating 18 U.S.C. §1962 (a)and (c) as described above.

103.    As a result, under 18 U.S.C. §2, the RICO violations of each defendant are those of the others as if they had been committed directly by them.

104.    As a direct and proximate result of the fact that each defendant aided and abetted the others in violating 18 U.S.C. §1962(a) and (c), plaintiff and class members have been injured in their business or property by both the predicate acts which make up the defendants' patterns of racketeering and their investment and reinvestment of income therefrom to operate, expand, and perpetuate the "Collection Enterprise."

23

105.    Specifically, plaintiff and class members have been injured in their business or property by the coerced payment of excess and improper charges, through undisclosed add-ons and threats of civil litigation and additional damages.

### COUNT IV

### *Violations of RICO 18 U.S.C. §1962(a) and (c)*

106.    Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

107.    This claim for relief arises under 18 U.S.C. §1964 (c).

108.    As set forth above, defendants have violated 18 U.S.C. §1962(a) by using and investing income received from a pattern of racketeering, directly or indirectly, to establish and operate the "Collection Enterprise," which is engaged in, and whose activities affect interstate commerce, and have violated 18 U.S.C. §1962(c) by conducting, or participating directly or indirectly in the conduct of, the affairs of the "Collection Enterprise" through a pattern of racketeering.

109.    As a direct and proximate result, plaintiff and the class members have been injured in their business or property by both the predicate acts which make up the defendants' patterns of racketeering activity and their investment and reinvestment of income therefrom to operate, expand, and perpetuate the "Collection Enterprise."

110.    Specifically, plaintiff and class members have been injured in their business or property by the coerced payments of excess and improper charges, through undisclosed add-ons and threats of civil litigation and additional damages.

## COUNT V

### *Civil Conspiracy*

111.   Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

112.   Defendants willfully, knowingly, and intentionally agreed and conspired with each other for the purpose of engaging in unlawful conduct, for unlawful purposes, including acts of extortion and fraud, the furtherance of their scheme, and for the purpose of engaging in otherwise lawful conduct by wrongful conduct and means.

113.   Defendants committed the acts alleged pursuant to, and in furtherance of, that agreement and furthered the conspiracy by cooperating, encouraging, ratifying, or adopting the acts of the others.

114.   As a direct and proximate result of the acts in furtherance of the conspiracy, plaintiff and class members have suffered injury, damage, loss, and harm.  The wrongful conduct committed pursuant to the conspiracy was a substantial factor in causing this harm.

115.   Defendants' intentional agreement to commit, and the commission of, these wrongful acts was willful, malicious, oppressive, and in wanton and conscious disregard of plaintiff's and class members' rights.  Plaintiff and class members are, therefore, entitled to an award of punitive damages to punish their wrongful conduct and to deter future wrongful conduct.

116.   As a result of Defendants' actions, plaintiff and class members have been damaged in an amount to be proven at trial.

## COUNT VI

### *Aiding and Abetting*

117.    Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

118.    Defendants had full knowledge of or should have reasonably known of the true nature of the wrongful conduct of each other Defendant, and aided and abetted such wrongful conduct, including acts of extortion, fraud, and conspiracy by providing substantial assistance and by encouraging the others to act.

119.    As a direct and proximate result of the aiding and abetting of these acts, plaintiff and class members have suffered injury, damage, loss, and harm.  The wrongful conduct aided and abetted by these Defendants was a substantial factor in causing this harm.

120.    Defendants' aiding and abetting of these wrongful acts was willful, malicious, oppressive, and in wanton and conscious disregard of plaintiff's and class members' rights. Plaintiff and class members are, therefore, entitled to an award of punitive damages to punish their wrongful conduct and to deter future wrongful conduct.

121.    As a result of Defendants' actions, plaintiff and class members have been damaged in an amount to be proven at trial.

## COUNT VII

### *Declaratory and Injunctive Relief Under 18 U.S.C. § 1964(a)*

122.    Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

123.    His claim arises under 18 U.S.C. §1964(a), which authorizes the District Courts to enjoin violations of 18 U.S.C. §1962, and under 28 U.S.C. §2201 which authorizes associated declaratory relief.

124.    As set forth in Counts II through IV above, defendants have violated 18 U.S.C. §§1962(a), (c) and (d) and will continue to do so in the future.

125.    Enjoining the defendants from committing these RICO violations in the future and/or declaring their invalidity is appropriate as the plaintiff and class members have no adequate remedy at law and will, as set forth above, suffer irreparable harm in the absence of the Court's declaratory and injunctive relief.

126.    As a result of Defendants' illegal collection practices, plaintiff and class members have suffered and will continue to suffer severe and irreparable injury and harm.

127.    Accordingly, plaintiff and class members seek a permanent injunction ordering defendants to cease and desist their practice of adding overcharges to the debt owed and threatening civil litigation in an effort to collect the excess amounts, in violation of RICO, as set forth above.  Moreover, plaintiff and class members seek a declaration that the defendants' use of a percentage up-charge on debts being collected is *per se* unreasonable and unconscionable, in that a 35% up-charge with the threat to add even more than that is not reasonable, and bears no relationship to the effort and activity involved in collecting the debt, nor the amount of the debt.

## COUNT VIII

## UNJUST ENRICHMENT

128.    Plaintiff incorporates by reference herein the preceding paragraphs of this complaint.

129.    The defendants add unreasonable, unconscionable and illegal charges to the original debt, and then use extortionate practices to collect the over charges.

27

130.    As a result of these debt collection practices, the defendants have been unjustly enriched by their collection of falsely misrepresented debt.

131.    Plaintiff and class members seek disgorgement of the illicit profits, restitution in the amount of the excess charges levied by Franklin, compensatory damages and other relief as set forth in the prayer for relief below.

## PRAYER FOR RELIEF

WHEREFORE, based upon the above, Plaintiff, on behalf of himself and all members of the class he represents, seeks judgment and requests that this Court grant the following relief:

(1)    For an order certifying the class, designating Plaintiff as the class representative, and Plaintiff's attorneys as class counsel;

(2)    Three times the amount of Plaintiff's and the class' economic losses resulting from Defendants' conduct described above as provided in 18 U.S.C. § 1964(c);

(3)    Permanent injunctive relief enjoining Defendants from participating in the improper and/or unlawful conduct herein alleged;

(4)    Compensatory and all other allowable damages, including statutory damages under the causes of actions asserted herein;

(5)    An award of costs, expenses of litigation, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c);

(6)    For an order requiring restitution of overpayments made by plaintiff and class members to defendants, and disgorgement of the money defendants have improperly collected; and

(7)   Such other and further, supplemental, alternative, different, or additional damages, pre- and post-judgment interest, costs, fees, or equitable relief as may be appropriate under the premises.

**PLAINTIFF AND CLASS MEMBERS RESPECTFULLY DEMAND A TRIAL BY STRUCK JURY.**

Respectfully submitted, this 27th day of February, 2008.


_____
A. David Fawal (BAR NO.: ASB-4593-W82A)
Beers, Anderson, Jackson,
   Patty & Fawal, P.C.
Suite 1125 Colonial Plaza
2101 6th Avenue North
Birmingham, Alabama 35203
(205) 327-5331
Fax (205) 327-5383
dfawal@beersanderson.com

_____
Allan L. Armstrong (BAR NO: ASB-4400-R77A)
Attorney at Law
2013 First Avenue North, Suite 450
Birmingham, Alabama 35203
(205) 453-0060
(800) 331-0052
allan@woolleylawfirm.com

_____
Darrell L. Cartwright, (BAR NO.: ASB-1771-I58D)
Cartwright Law Corporation
P.O. Box 383204
Birmingham, AL  35238-3204
(205) 222-5900 (direct)
(205) 823-5374 (facsimile)
DCartwright@Gmail.com

**SERVE DEFENDANTS AT THE FOLLOWING ADDRESSES:**

**Franklin Collection Services, Inc.**
c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, Alabama  36109-5420

**UAB West**
c/o Dan Eagar
995 9th Avenue SW
Bessemer, Alabama  35021

**UAB Health System**
c/o Agent Ira B. Leonard
UAB Administrative Building
8th Floor UAB Station
Birmingham, Alabama  35233

## STATEMENT

| DATE | CHARGE # | DESCRIPTION | AMOUNT |
|---|---|---|---|
| 06/22/07 | | BILL | 735.00 |
| | | Charges to date: | 735.00 |
| | | Estimated insurance due: | 0.00 |

RECEIVED
JAN 1 6 2008
BY: *Kevin*

| TOTAL | PAYMENTS/ ADJUSTMENTS | INSURANCE AMOUNT | PATIENT BALANCE |
|---|---|---|---|
| 735.00 | 0.00 | 0.00 | 735.00 |

**PAY THIS AMOUNT**
**735.00**

STATEMENT DATE
08/14/07
PAYMENT DUE BY
08/28/2007

Thank you for choosing Medical West for your Healthcare needs.  The enclosed statement reflects the balance now due for the Medical Services received.  For assistance please contact Customer Service at (205)481-7121 7:00am/4:30pm M-F.

RE:  PATIENT NAME:  MADELINE CALMA

DATE OF SERVICE:  06/17/07

INSURANCE INFORMATION:
SIMPLE STM CLAIMS C/O 031557915470

PLEASE DETACH AND RETURN BOTTOM PORTION WITH YOUR PAYMENT



MAKE CHECKS PAYABLE TO:

UAB **Medical West**
*a member of the UAB Health System*
P.O. BOX 847
BESSEMER, AL 35021-0847

31455

IF PAYING BY MASTERCARD OR VISA, FILL OUT BELOW.

| STATEMENT DATE | PAY THIS AMOUNT | ACCT. # |
|---|---|---|
| 08/14/07 | 735.00 | V00019390822 |

31455*T5N0GNKM7000059

**PAGE: 1 of 1**

☐ Please check box if address is incorrect or insurance information has changed, and indicate change(s) on reverse side.

SHOW AMOUNT PAID HERE $

0101

KEVIN A CALMA
5817 TEAKWOOD CIRCLE
TUSCALOOSA, AL 35405-5628

UAB MEDICAL WEST
P.O. BOX 2224
BIRMINGHAM, AL 35246-0027

0001939082250000735000814079630000000000000



EXHIBIT
*A*

PENGAD 800-631-6989

## STATEMENT

| DATE | CHARGE # | DESCRIPTION | AMOUNT |
|------|----------|-------------|--------|
| 09/04/07 | | Balance Forward | 735.00 |
| | | Charges to date: | 735.00 |
| | | Estimated insurance due: | 0.00 |

RECEIVED
JAN 1 8 2008
BY: Kevin

| TOTAL | PAYMENTS/ADJUSTMENTS | INSURANCE AMOUNT | PATIENT BALANCE |
|-------|---------------------|------------------|-----------------|
| 735.00 | 0.00 | 0.00 | 735.00 |

**PAY THIS AMOUNT**
**735.00**

STATEMENT DATE
09/25/07
PAYMENT DUE BY
10/09/2007

This is your third and final statement. If payment is not
received, your account will be turned over to
our Collection Agency. Please pay at once to avoid incurring
additional expenses. Call Customer Service at (205)481-7121.

RE:  PATIENT NAME:  MADELINE CALMA

DATE OF SERVICE:  06/17/07

INSURANCE  INFORMATION:
SIMPLE STM CLAIMS C/O 031557915470

PLEASE DETACH AND RETURN BOTTOM PORTION WITH YOUR PAYMENT

MAKE CHECKS PAYABLE TO:

**UAB**
**Medical West**
a member of the UAB Health System
P.O. BOX 847
BESSEMER, AL 35021-0847

31455

IF PAYING BY MASTERCARD OR VISA, FILL OUT BELOW.
CHECK CARD USING FOR PAYMENT
☐ MASTERCARD   ☐ VISA

| CARD NUMBER | | SIGNATURE CODE |
| SIGNATURE | | EXP. DATE |

| STATEMENT DATE | PAY THIS AMOUNT | ACCT. # |
|----------------|-----------------|---------|
| 09/25/07 | 735.00 | V00019390822 |

31455*T6T0IJLGS000079

☐ Please check box if address is incorrect or insurance
information has changed, and indicate change(s) on reverse side.

**PAGE: 1 of 1**

SHOW AMOUNT
PAID HERE $


0101

KEVIN A CALMA
5817 TEAKWOOD CIRCLE
TUSCALOOSA, AL 35405-5628

UAB MEDICAL WEST
P.O. BOX 2224
BIRMINGHAM, AL 35246-0027

00019390822500007350009250756300000000000



EXHIBIT
B

Form U3-01

## FRANKLIN COLLECTION SERVICE, INC.

### 888-215-8962 * E-Mail: FSCOLL@FRANKLINSERVICE.COM

JANUARY 15, 2008

### * * * NOTICE OF INTENT TO FILE CIVIL LAWSUIT * * *

Beware, the creditor listed below has authorized Franklin Collection Service Inc., to file a civil lawsuit against you on their behalf to secure themselves from any further loss.

Also be advised to avoid the possibility of incurring added expenses such as court cost, attorney fess and/or damages this debt should be paid in full. This communication is from a debt collector. This is an attempt to collect a debt; any information obtained will be used for this purpose.

### ***CAUTION***

### *INCLUDE YOUR CASE NUMBER AND MAIL THIS NOTICE WITH PAYMENT.*
### * FOR PROPER CREDIT *

You can now pay by check over the phone by calling (888) 215-8962. Have your case number and checking account number ready when you call.

Business Hours: Monday - Saturday  8 a.m. to 9 p.m.

Sincerely,

Franklin Collection Service, Inc.

YOU MAY PAY AT YOUR CONVENIENCE BY VISITING OUR WEBSITE WWW.FRANKLINSERVICE.COM, OR BY CALLING 866-319-0760. PAYMENT IS ACCEPTED BY CHECK OR CREDIT CARD.

TO EXPEDITE YOUR PAYMENT CALL 888-215-8962 FOR CHECK BY PHONE, QUICK COLLECT OR CREDIT CARD INSTRUCTIONS.

ASK FR: GWEN
EXT. 1731

P.O. BOX 3910
TUPELO, MS  38803-3910

| | |
|---|---|
| NOTICE DATE: | JANUARY 15, 2008 |
| BALANCE DUE: | $992.25 |
| CASE NUMBER: | 011841787 |
| PATIENT ACCOUNT NUMBER: | V00019390822 |

MAKE CHECK PAYABLE TO UAB MEDICAL WEST

KEVIN A CALMA
5817 TEAKWOOD CIR
TUSCALOOSA AL 35405-5628

UAB MEDICAL WEST
PO BOX 2224
BIRMINGHAM, AL  35246-0027

00019390822500009922501150816303001 1841787

EXHIBIT

C

PENGAD 800-631-6989

## UAB Medical West

Patient Name: Haire,Katonia _____ Account Number: V00012763777 Unit Number: M000188474 Date: 05/07/04

### Consent for Hospital Services:

I, hereby, authorize the hospital, its employees, agents and physicians on the Medical staff to provide treatment, maintenance, care, tests, diagnostic procedures, x-rays, surgical and medical treatment as may be necessary for the preservation or protection of my health, safety and well-being. I understand that no guarantees have been given as to the effectiveness or outcome of any treatment or procedure rendered. I intelligently, voluntarily and freely give my consent or warrant that I am legally authorized to give consent on behalf of the patient.

### Personal Valuables:

UAB Medical West is not responsible for money, jewelry, dentures, hearing aids, eyeglasses, watches, credit cards, and other items which are not deposited in the hospital safe.

### Authorization to Release Information:

I authorize UAB Medical West to release medical records, related medical information and charge information of this hospital visit for the purpose of determining insurance coverage and medical payment owed to the hospital for all or part of the hospital's charges, including but not limited to hospital or medical service companies, insurance companies, worker's compensation carriers, or welfare funds. I certify that the information given by me in applying for payment under the XVIII and XIX of the Social Security Act is correct. I authorize any holder of medical information given by me to release to the Social Security Administration or its intermediaries or the Medicaid agency or its intermediaries any information needed for the Medicare or Medicaid claim. I consent to the release of information including psychiatric, drug, alcohol, and substance abuse records. Includes Bessemer Emergency Physicians.

### Assignment of Benefits (if covered by insurance):

I herein assign all benefits that I might receive from any insurance carrier or payment source, whether or not I am the policyholder, directly to the hospital. I assign to the hospital for the purpose of payment and hereby revoke any prior authorizations which I may have given to the contrary. I agree to cooperate fully with the hospital's efforts to obtain payment under any such policy and will execute any additional documents any insurance company may require in order to process and pay the hospital's claim. In the event of an overpayment of insurance benefits, I authorize the hospital to refund the party determined to have overpaid the claim. Includes Bessemer Emergency Physicians.

### Physicians:

All physicians on the staff of UAB Medical West, as well as the emergency department physicians, anesthesiologists, pathologists and radiologists, render services in our facilities. However, none of these physician are employees or agents of UAB Medical West and you will be billed for their services.

### Financial Responsibility:

I understand that by signing below I AGREE TO PAY THE HOSPITAL BILL for the services rendered, whether or not I am the patient. I agree that I will pay this bill in full whether or not the charges are or should have been covered by insurance or other payment source. I agree that if this account is not paid when due, and if the hospital should retain an attorney or collection agency for collection. I agree to pay all costs of collection including interest, reasonable attorney's fee (even if suit filed) and reasonable collection agency fees. I hereby waive all rights of exemption which are available to me under the laws of the State of Alabama or of the United States.

### Patient Rights and Responsibility:

→ K.T.H. I have received a copy of UAB Medical West's Patient Rights and Responsibilities. These rights and responsibilities have been explained to me. All of my questions concerning patient rights and responsibilities have been addressed to my satisfaction.

### Acknowledgement of Notice of Health Information Practices:

→ K.T.H I have received a copy of UAB Medical West's Notice of Health Information Practices on 02/28/04. These practices have been explained to me. All questions concerning this notice have been addressed to my satisfaction.

Signature: _____ Phone: 249-8398

Relationship: Self                     SS#: 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

Address: 3031 Cedar Brook Lane Hoover, Al 35216

Signed in the presence of: _____ Date: 05-07-04



EXHIBIT

D

FRANKLIN COLLECTION SERVICE, INC
662-8--6720 * E-Mail: FSCOLL@FRANKLINSERVICE.COM

DECEMBER 28, 2004

## ASSIGNMENT OF COLLECTION

IF YOU ARE NOT PAYING THIS ACCOUNT IN FULL CONTACT YOUR ATTORNEY REGARDING OUR POTENTIAL REMEDIES OR CALL THE ABOVE NUMBER NOW.

UNLESS YOU NOTIFY US WITHIN THIRTY (30) DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THE DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME THIS DEBT IS VALID. IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN THIRTY (30) DAYS FROM RECEIVING THIS NOTICE, THIS OFFICE WILL OBTAIN VERIFICATION OF THE DEBT OR OBTAIN A COPY OF A JUDGEMENT AND MAIL YOU A COPY OF SUCH JUDGEMENT OR VERIFICATION. IF YOU REQUEST THIS OFFICE IN WRITING WITHIN THIRTY (30) DAYS AFTER RECEIVING THIS NOTICE, THIS OFFICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT FROM THE CURRENT CREDITOR.

THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT. ALL INFORMATION OBTAINED WILL BE USED FOR THIS PURPOSE. YOU MAY PAY BY CHECK OVER THE PHONE BY CALLING (866) 215-8962. HAVE YOUR CASE NUMBER AND CHECKING ACCOUNT NUMBER READY WHEN YOU CALL.

FOR YOUR CONVENIENCE YOU MAY PAY BY PHONE 24 HOURS A DAY, 7 DAYS A WEEK. CALL 866-319-0760 WITH YOUR CHECK OR CREDIT CARD INFORMATION READY TO COMPLETE YOUR PAYMENT TRANSMITTAL.

BUSINESS HOURS:   MON - SAT    8AM - 9PM

SINCERELY,
FRANKLIN COLLECTION SERVICE, INC.

FRANKLIN COLLECTION SERVICE, INC. IS LICENSED BY THE TENNESSEE COLLECTION SERVICE BOARD OF THE DEPARTMENT OF COMMERCE AND INSURANCE

TO EXPEDITE YOUR PAYMENT CALL 888-215-8962 FOR CHECK BY PHONE, QUICK COLLECT OR CREDIT CARD INSTRUCTIONS.

P.O. BOX 3910
TUPELO, MS  38803-3910

| | |
|---|---|
| NOTICE DATE: | DECEMBER 28, 2004 |
| BALANCE DUE: | $1,315.22 |
| CASE NUMBER: | 007486203 |
| PATIENT ACCOUNT NUMBER: | V00012815411 |

MAKE CHECK PAYABLE TO UAB MEDICAL WEST

KATONIA HAIRE
1402 HAMPTON PARK DR
HOOVER AL 35216-6575

UAB MEDICAL WEST
PO BOX 2224
BIRMINGHAM, AL  35246-0027

00012815411900013152212280416303030007486203


EXHIBIT
E